THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANICETO LABOY DÍAZ, Defendant and Appellant.

No. CR-63-131.    Decided March 17, 1964.

*Juanita Treviño Monserrate* and *Eduardo E. Ortiz Quiñones* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

An information was filed in the Superior Court, Humacao Part, against Aniceto Laboy Díaz for the offense of burglary in the first degree. He was charged with:

". . . about October 2, 1960 and within the municipality of Humacao . . . he illegally broke into, at nighttime, the building occupied by the Rotary Club of Humacao with the intention of committing, as he did commit, larceny. . . ."

After a trial without a jury he was "convicted of the offense of burglary in the first degree," and sentenced from one to two years in the penitentiary at hard labor. He appealed to this Court from that judgment.

In the interesting brief presented to us he charges the trial judge with the commission of two errors: (1) in deciding that he had committed that offense when all its elements were not proved, and (2) in applying "a juridical figure different from that defining the offense of burglary in the first degree."

We agree with the defendant-appellant that both errors were committed and that, because of their seriousness, the judgment appealed from should be reversed and his acquittal decreed.

Section 408 of our Penal Code defines the offense of burglary thus:

"Every person who enters any house, room, apartment, tenement, shop, warehouse, store, barn, stable, outhouse, or other building, tent, vessel or car, with intent to commit grand or petit larceny, or any felony, is guilty of burglary."

■ Pursuant to that definition, in order to find a person guilty of that offense it is necessary that it be proved, beyond a reasonable doubt, that he broke into the places mentioned therein, for the specific purpose of committing grand or petit larceny or any felony.

■ We have studied and analyzed with great care all the evidence presented, as we should unremittingly do in every case in which the liberty of a human being is at stake. Only the conscientious discharge of that responsibility should give the satisfaction of a well-accomplished judicial mission. In our opinion in this case there is no evidence which rationally supports the declaration of guilt.

■ The evidence of the prosecuting attorney consisted of the testimony of Anastacio Rodríguez, Jesús Carrasquillo Soto, Rafael Carrasquillo, Luz Teresa Rivera, and Blas Sánchez Olmeda. The defendant offered as his only evidence the additional testimony of the aforesaid witness for the prosecution, Jesús Carrasquillo Soto.

A summary of the facts and circumstances clearly established by those testimonies is as follows:

Jesús Carrasquillo Soto and his brother Rafael were owners of a bar operated by them in the building of the Rotary Club of Humacao. Anastacio Rodríguez, the witness, was bartender. On October 2, 1960, appellant Aniceto Laboy Díaz had been employed by Jesús Carrasquillo to work in the bar. He lived in a house situated at the rear of the Rotary Club, together with the Carrasquillo Soto brothers. One of them, Jesús, had authorized the defendant to take certain articles from the bar such as, "let's say, a quart of some liquor and that upon notifying him it would be deducted from his salary." Tr. 26. It was a practice of the bartender to leave in the register every night the sum of $10 in cash. When the latter arrived at his work on the morning of October 3, 1960, he found that "a bottle of Cointreau was missing" and that of the $10 left in the cash register "$7 were missing, but later, I found, that they were in a voucher in the register." Tr. 7. The preceding evening, that is, from the second to the third of October, a dance was held in the residence of witness Luz Teresa Rivera. The defendant was there. After having stayed for a while he left the dance saying to Luz Teresa "that he was going to get some liquor where he worked." Tr. 21. At about eleven o'clock that night the co-owner of the bar, Rafael Carrasquillo, was going to bed "in the same little house at the rear of the Rotary Club." Tr. 16. Upon passing in front of the club he heard a noise, he looked towards the club and recognized Aniceto who was inside; that since Aniceto worked in the bar, and he was doing nothing there, he slept with them, he, Rafael Carrasquillo, continued walking and went to sleep without asking Aniceto what he was doing there and he did not see him open the cash register. Tr. 19. Aniceto went back to the dance with a bottle of liquor and consumed it there, remaining at the dance. That same night, Jesús Carrasquillo Soto,

the other co-owner, went "to check" the club as he customarily did; he noticed that there was a door open, he closed it; he went to see his brother Rafael and the latter told him "I saw a guy. . . ."—Tr. 14; because of what his brother told him he went to the bar and noticed that of the $10 that had been left in the cash register there were $7 missing; he did not notice that anything else was missing—Tr. 14; that since he noticed "that some money was missing"—the $7 that were represented or substituted by the voucher that this witness had not noticed until that moment—he notified the police immediately; in his testimony he said that "the notice that I gave to the police was because of the money." On the basis of this information a police sergeant immediately and without a warrant of arrest entered the house of Luz Teresa Rivera and there arrested and submitted the defendant to a personal search and seized the sum of $1.11 in cash. On the witness stand the sergeant testified that "in the presence of the chief—the chief did not testify—the defendant said that he had entered into the business of the Rotary Club and taken a bottle, and also he had taken a liquor bottle there, I do not know what brand, and $1.40 in cash." Tr. 24.

On that evidence the prosecution did not prove, beyond a reasonable doubt, the illegal entry nor the specific intention to commit grand or petit larceny, or any felony.

We see no rational ground for not believing as true the testimony given by Jesús Carrasquillo at the trial, with respect to his testimony as witness for the prosecution as well as to that part given as witness for the defense. When he testified for the first time he merely stated that he noticed that there were $7 missing from the cash register and that the door of the Rotary Club was open and for that reason he notified the police; that afterwards it was established that this was erroneous since no money had been stolen from the cash register since the $7 that were apparently missing

had been taken against the voucher which guaranteed its return. He did not notice the voucher that had been left in the register. Under these circumstances we could not consider it unjustified that he notified the police nor that he had reasons to believe that if that night his brother Rafael had seen the defendant at the bar and near the cash register, that if $7 were missing in cash and if the door on the street side was open, the defendant was the author of the apparent burglary.

When in the same session and shortly after he had testified for the prosecution he was called to testify for the defense, he was asked and he answered on another matter, and, under oath stated that he had employed the defendant to take charge of the cleaning of the bar, that the defendant helped him at night in the bar and received a weekly wage —the bartender Anastacio Rodríguez and Rafael Carrasquillo, the other co-owner, testified to this same effect—and that he had authorized him to take from the bar and charge it to his weekly wage, notifying him in order to make the deduction. His second testimony was not contradicted by anyone. It is not contrary to the first one. Nor is it improbable or unbelievable, nor impossible among persons who work in the same place to help each other mutually and live together near the business place.[1]

---

[1] In pronouncing judgment the trial judge stated:

"THE COURT: Very well, Defendant rise. Stand up. This is a case in which Anastacio Laboy Díaz went on a spree in Humacao, needed liquor, and according to the evidence, he had worked in the club doing the cleaning and that day he told the girl who came here and testified, that he was going to go for some liquor; he went to the club and took the bottle. That is forbidden by law even if he is an employee. Being an actual employee, it is forbidden to enter a club at eleven o'clock at night, where he said that he was caught by one of the brothers because he lighted a match and he was there and he took the liquor. The court sees here that this witness, the co-owner, whatever his name is, Jesús Carrasquillo, I believe, or Rafael Carrasquillo, that now wishes to help this man, but that previously when he complained to the prosecuting attorney he did not wish to help anyone and testified that he had broken into the business, that a

It can hardly be concluded that the specific intent to commit the offense of larceny was proved when the defendant openly announced to those present at the dance that "he was going to get some liquor where he worked"—Tr. 21— went there, took a bottle, brought it to the dance, drank of it, and under the previous authorization of his employer and knowing that as previously agreed, he would pay the cost.

There is a fact from which it may be reasonably inferred that when the defendant went to get the liquor the door of the establishment had no padlock. It is a logical deduction which may be made from the action of Jesús Carrasquillo upon reaching the door, opening the padlock and then closing the door. Tr. 14. Who can affirm that it was not the author of the voucher who had first left it open?

That the defendant was doing nothing wrong or illegal in his visit at the bar that night seems to be the belief of co-owner Rafael Carrasquillo, who, in part, testified:

"DEFENSE: And you knew, he slept in the same house with you?

A. Yes, sir.

Q. Then, you did not see him open the cash register? Did you see him open the cash register?

THE COURT: Answer with the mouth.

A. No, sir.

THE DEFENSE: You only saw him light a match?

A. Yes, sir, I saw him.

Q. You knew he worked there, you did not ask him what he was doing there?

A. No, sir, I went to sleep."

When the trial judge was requested to reconsider his judgment and acquit the defendant because it was not established beyond a reasonable doubt that he committed the offense charged, that is, that the illegal entry and the spe-

---

bottle was missing, and now, when he is before the court, he wishes to help him and wishes him to be acquitted. The court does not believe his second testimony and finds this man guilty of burglary in the first degree."

cific intent to steal was not established, he refused to reconsider for the following reason:

"THE COURT: He need not steal anything. *To see him inside the place is burglary,* even if he does not steal, and there are persons who saw him, the witness, brother of the owner." Tr. 32. (Italics ours.)

■ It is impossible to attribute this consequence or these legal effects to the simple fact of being seen within an establishment, taking into consideration the text copied above of § 408 of the Penal Code. *Cf. People* v. *Pérez,* 48 P.R.R. 704, 706 (1935).

We do not maintain that the action of the defendant was impeccably correct, nor that he could have acted in a more acceptable or desirable manner, nor that he could have avoided that the idea might come to the mind of his employer that his business had been burglarized that night. What we do maintain is that taking all the circumstances of the case as a whole, they are compatible with the image of an innocent action of the defendant done in good faith, but which can never be labeled as a criminal action.

The judgment appealed from will be reversed and the defendant acquitted.